UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID J. BROWN, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 00540 |
| | ) | |
| v. | ) | |
| | ) | Judge Edmond E. Chang |
| EDWARD SMITH, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff David Brown brings this suit [R. 18] under 42 U.S.C. § 1983 against Defendant Edward Smith for alleged violations of Brown's right to equal protection under the Fourteenth Amendment.[1] Smith now moves to dismiss the complaint [R. 23] under Federal Rule of Civil Procedure 12(b)(6). For the reasons stated below, Smith's motion to dismiss is denied.

**I. Background**

In evaluating this motion to dismiss, the Court accepts Brown's factual allegations as true and draws reasonable inferences in his favor. *Ashcroft v. al-Kidd*, — U.S. —, 131 S.Ct. 2074, 2079 (2011). In February 1999, Brown was convicted of a sexually violent offense within the meaning of the Illinois Sexually Violent Persons Commitment Act (SVPCA), 725 ILCS 207/1-99. R. 18, Second Am. Compl. ¶ 13. He was sentenced to three years' imprisonment and a consecutive term

---

[1]This Court has subject matter jurisdiction under 28 U.S.C. § 1331. Citations to the docket are indicated by "R." followed by the docket entry.

1

of two and one-half years of probation. *Id.* Three days before Brown's mandatory supervised release date, the State filed a petition alleging that Brown was a "sexually violent person" (SVP) under Illinois law and requesting that he be committed under the SVPCA. *Id.* ¶ 14. Thus, on Brown's mandatory release date, he was transferred from the Illinois Department of Corrections (IDOC) to the custody of the Illinois Department of Human Services (IDHS). *Id.* ¶ 14.

In January 2000, an Illinois state court found probable cause to believe that Brown was an SVP. *Id.* ¶ 15. Despite the statutory requirement that Brown receive a trial on the merits of the State's petition within 120 days of the state court's probable-cause finding, see 725 ILCS 207/35(a), Brown did not receive a trial until March 2007. *Id.* ¶¶ 16-17. Following a bench trial, on March 27, 2007, the state court declared Brown an SVP. *Id.* ¶ 17. One year later, the court entered an order committing Brown to the custody of the IDHS for control, care, and treatment until Brown is "no longer" an SVP. *Id.* ¶ 18.

Section 55(a) of the SVPCA requires the IDHS to prepare and submit to the court a written report on the committed person's mental condition within six months of the initial commitment and at least once every twelve months going forward. 725 ILCS 207/55(a). The IDHS reports must be based on an evaluation by an evaluator approved by the Sex Offender Management Board and must be conducted in accordance with standards developed under the Sex Offender Management Board Act. 725 ILCS 207/55(b). Reports of those evaluations must address whether the committed person (1) suffers from one or more mental

2

disorders which are congenital or acquired conditions affecting the person's emotional or volitional capacity and predisposing him or her to engage in acts of sexual violence, § 207/5(b); (2) whether, due to the committed person's mental disorder(s), it is "substantially probable that [the committed person] will engage in acts of sexual violence," § 207/5(f); and, (3) if the evaluator finds that the committed person suffers from one or more such disorders and that the disorder(s) makes it substantially probable that the committed person will engage in acts of sexual violence, whether the committed person has made sufficient progress to be safely managed in the community by the IDHS under supervised conditional release, § 207/55(a).

The IDHS contracted with Smith, a licensed clinical psychologist, to conduct Brown's initial re-examination. Second Am. Compl. ¶ 19. Smith interviewed Brown over the course of two days and reviewed materials related to Brown's background. *Id.* ¶ 21. Based on this information, and with the aid of an actuarial risk assessment instrument called STATIC-99, Smith assessed Brown's risk of recidivism as "high." *Id.* ¶¶ 22-25. Brown was surprised by Smith's conclusion because in two previous evaluations—predating Brown's civil commitment order—a different evaluator using the same STATIC-99 instrument had determined that Brown had only a "medium-high" recidivism risk. *Id.* ¶ 25. The STATIC-99 assessment considers only static risk factors like whether a subject is below twenty-five years old, has ever lived with a lover for at least two years, has committed a current, non-sexual violent

3

offense, and others. *Id.* ¶ 24. None of these factors had changed since Brown's previous evaluations. *Id.* ¶ 25.

In 2010, the IDHS again assigned Smith to conduct a re-examination of Brown. *Id.* ¶ 27. Smith's report stated that Brown declined to participate in the evaluation process and again placed Brown in the "high" risk category for recidivism. *Id.* ¶¶ 27, 30. This time, Smith used an updated instrument called STATIC-99R, which evaluated the same characteristics as STATIC-99 with the exception of one: STATIC-99R placed subjects into four age categories, whereas the original STATIC-99 used only two (over or under age twenty-five). *Id.* ¶ 29. Because Brown was over twenty-five during each evaluation, this measure would not have affected his score. *Id.*

Smith evaluated Brown again in 2011. *Id.* ¶ 33. During this evaluation, Brown challenged what he perceived as multiple factual inaccuracies in Smith's 2010 evaluation report, including Smith's scoring of the STATIC-99R instrument and reporting incorrect information regarding certain "antisocial behaviors" from Brown's childhood. *Id.* ¶¶ 34-35. Brown alleges that Smith's response was "I'm not changing nothing. I will do whatever is necessary to make sure you never get out. You homosexuals are a plague you're a disease you cause more harm to society than anything else." *Id.* ¶ 36. Brown did not report this information to anyone at the detention facility for fear of retaliation. *Id.* ¶ 37. Smith's 2011 report once again placed Brown in the "high" risk category. *Id.* ¶ 38.

Brown then filed this suit, alleging that Smith had violated his Fourteenth Amendment rights by intentionally falsifying psychological re-examination reports on the basis of Brown's actual or perceived sexual orientation. *Id.* ¶ 41. Brown contends that Smith, acting under color of law, treated Brown differently than other, similarly situated heterosexual persons without any rational basis for doing so. *Id.* Smith now moves to dismiss Brown's complaint, asserting absolute immunity for his work as an IDHS evaluator. R. 24, Def.'s Br. at 1-2.

## II. Legal Standard

"A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). These allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The allegations that are entitled to the assumption of truth are those that are factual, rather than mere legal conclusions. *Iqbal*, 556 U.S. at 678–79.

## III. Analysis

Smith seeks to dismiss Brown's claim on the ground that he is entitled to absolute immunity for the conduct that Brown alleges. Under 42 U.S.C. § 1983, absolute immunity is the exception, not the rule, and whether absolute immunity applies depends on the nature of the function performed by the government official:

5

> "[A]bsolute immunity from civil liability for damages is of a 'rare and exceptional character.'" *Auriemma v. Montgomery*, 860 F.2d 273, 275 (7th Cir. 1988) (quoting *Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985)). Because it is a complete defense to liability for money damages, "[a]bsolute immunity is only accorded for limited functions; 'the presumption is that qualified rather than absolute immunity is sufficient to protect government officials in the exercise of their duties.'" *Wilson v. Kelkhoff*, 86 F.3d 1438, 1443 (7th Cir. 1996). Accordingly, officials claiming the "strong medicine" of absolute immunity bear the burden of showing that public policy justifies immunity for the function in question. *Forrester v. White*, 792 F.2d 647, 660 (7th Cir. 1986) (Posner, J. dissenting).
>
> The test to determine whether an official is entitled to absolute immunity is well-established: a court must apply a "functional approach" by "look[ing] to the nature of the function performed, not the identity of the actor who performed it." *Heyde v. Pittenger*, 633 F.3d 512, 517 (7th Cir. 2011) (quoting *Wilson*, 86 F.3d at 1443). Absolute immunity is not limited to prosecutors or judges, but rather "protects members of quasi-adjudicatory bodies when their duties are functionally equivalent," *id.*, "and require a full exemption from liability," *Butz v. Economou*, 438 U.S. 478, 508 (1978).

*Johnson v. Root*, 812 F. Supp. 2d 914, 919-20 (N.D. Ill. 2011).

Smith argues that, applying this functional approach, many courts have concluded that "individuals performing investigative or evaluative functions at the request of an adjudicative government entity to assist that entity in its decision-making process are entitled to absolute immunity." Def.'s Br. at 6. Accordingly, as a private psychologist retained by the IDHS to evaluate Brown, Smith contends that he should likewise be entitled to absolute immunity from Brown's claim. *Id.*

In support, Smith relies primarily on *Williams v. Consovoy*, 453 F.3d 173 (3d Cir. 2006) and *Morstad v. Dep't of Corr. & Rehab.*, 147 F.3d 741 (8th Cir. 1998). In *Williams*, a prisoner who had been denied parole brought a § 1983 suit against the psychologist who had evaluated him under a contract with the New Jersey Parole Board. 453 F.3d at 175. The Third Circuit determined that in performing an

evaluation and presenting findings to the adjudicative parole board, the psychologist had "performed a function integral to the judicial process" and was thus entitled to absolute immunity. *Id.* at 178. In *Morstad*, a court-appointed psychologist evaluated a sexual offender and testified at the offender's probation revocation hearing. 147 F.3d at 744. The Eighth Circuit affirmed the district court's dismissal of the offender's claim against the psychologist, reasoning that because the psychologist had evaluated the offender at the court's direction, the psychologist was performing "functions essential to the judicial process" and was entitled to absolute immunity. *Id.*

Smith's reliance on these cases is unavailing for two reasons: (1) as Smith acknowledges, the Seventh Circuit has not yet addressed the issue of absolute immunity for a testing psychologist appointed by someone other than the court or the adjudicative entity, Def.'s Br. at 8, and (2) both *Williams* and *Morstad* are distinguishable from the facts here. *Morstad* and a number of Seventh Circuit cases support the proposition that *court-appointed* experts are entitled to absolute immunity for evaluations performed at a court's direction. *See, e.g.*, *Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) ("Guardians ad litem and court-appointed experts, including psychiatrists, are absolutely immune from liability for damages when they act at the court's direction."). *Williams* stands for a similar proposition, in that the defendant-psychologist was appointed by the parole board—itself an adjudicative entity for the plaintiff's parole-revocation hearing. 453 F.3d at 178. But Smith was *not* court-appointed. Nor did he or the IDHS (which *did* appoint

7

Smith) act as an adjudicative entity in this context: the SVPCA places sole decisionmaking power over a SVP's discharge with the committing court. *See* 725 ILCS 207/65.

For similar reasons, Smith's argument that the Seventh Circuit "has consistently applied absolute immunity to parole board members" is not persuasive. *See* Def.'s Br. at 8. In *Wilson v. Kelkhoff*, 86 F.3d 1438, 1445 (7th Cir. 1996), for example, the Seventh Circuit extended absolute immunity to prisoner board members, finding that "[t]he decision to revoke [the plaintiff's] supervised release . . . is a prototypical quasi-judicial act deserving of absolute immunity." The plaintiff in that case argued that the board members' nondiscretionary actions—that is, those actions other than the parole adjudication—fell outside the scope of the doctrine. *Id.* at 1444. The Seventh Circuit rejected that argument. *Id.* It reiterated that "conduct deserving of protection includes not only actual decisions, but also those mundane, even mechanical, tasks *undertaken by judges* that are related to the judicial process." *Id.* at 1444-45 (emphasis added). Accordingly, it held that the board members' "activities that are inexorably connected with the execution of parole revocation procedures and are analogous to judicial action invoke absolute immunity." *Id.* at 1444 (internal quotation marks and citation omitted). Smith relies on the latter holding to argue that his activities were also "inexorably connected" with the judicial process. *See* Def.'s Br. at 8-9; R. 29, Reply Br. at 2. But his argument misconstrues the Seventh Circuit's holding: the principle that an adjudicator's nondiscretionary actions may fall within the scope of the larger

judicial function does not support Smith's conclusion that *his* nondiscretionary activities fall within an adjudicator's judicial function.

The best argument (though ultimately unpersuasive) that Smith can advance for absolute immunity is that the evaluation that Smith generated for Brown's SVP status appears to be required by Illinois law. *See* 725 ILCS 207/55 (requiring periodic reexaminations under the SVPCA to be performed in accordance with the Sex Offender Management Board Act and the Sex Offender Evaluation and Treatment Provider Act); 20 ILCS 4026/18 ("[IDHS] shall not employ or contract with . . . any individual or entity to provide sex offender evaluation or treatment services pursuant to this Act unless the sex offender evaluation or treatment services provided are by a person licensed under the Sex Offender Evaluation and Treatment Provider Act."); 225 ILCS 109/35 (setting out qualifications for licensure as a sex offender evaluator). But this does not, as Smith contends, render him an "arm of the court." *See* Reply Br. at 6. Absolute immunity extends to judges (or quasi-judicial actors) and those acting at *judicial* direction, in furtherance of a judicial function. Smith conducted his evaluation on appointment by an *executive* agency acting at the direction of a *legislative* mandate.

In similar circumstances, the Supreme Court has rejected a prosecutor's contention that absolute immunity applied to her (allegedly) perjurious factual submission in support of an arrest warrant. *Kalina v. Flecther*, 522 U.S. 118, 129-30 (1997). In *Kalina*, Washington's Criminal Rules required that arrest warrants be supported by an affidavit or sworn testimony establishing reasons for the warrant's

issuance. *Id.* at 121. The Supreme Court reaffirmed that an officer's submission of an affidavit in support of an arrest warrant is protected only by qualified immunity, and "is further removed from the judicial phase of criminal proceedings than the act of a prosecutor in seeking an indictment." *Id.* at 128 (quoting *Malley v. Briggs*, 475 U.S. 335, 342-43 (1986)). Although the issue in *Kalina* was whether absolute prosecutorial (rather than judicial) immunity applied, the rationale applies equally well here: Smith is in the same functional position as any other executive-branch official who submits allegedly false (and allegedly discriminatory) information to the judicial branch, where it is *not* the state court that appointed Smith to submit information or evidence. It is true that Illinois state law appears to require the submission of an evaluator's report, but that is no different from *Kalina*, where a State of Washington requirement (via its Criminal Rules) dictated that an affidavit be submitted in support of an arrest warrant. Indeed, the ultimate law in our system—the Constitution—requires an arrest warrant to be supported on oath and affirmation. U.S. Const., am. IV ("no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the . . . persons . . . to be seized.") So it does not matter that Smith was performing a function that was required by Illinois law—the important point is that the state court did not appoint him. Absolute immunity is the exception, not the rule, and does not apply here.

### IV. Conclusion

For the reasons stated above, Smith's motion to dismiss [R. 23] is denied. On July 21, 2014, the parties shall file a new initial status report (updating R. 26) so

10

that the Court can set a discovery schedule or, if the parties agree, can enter a settlement-conference referral.

ENTERED:

s/Edmond E. Chang
Honorable Edmond E. Chang
United States District Judge

DATE: July 16, 2014